RECEIVED
IN MONROE, LA
OCT 23 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| GRAPHICS PACKAGING INTERNATIONAL, INC., ET AL. | CIVIL ACTION NO. 05-1728 |
| VERSUS | JUDGE ROBERT G. JAMES |
| G & Z MONTAGESERVICE GmbH, ET AL. | MAG. JUDGE MARK L. HORNSBY |

RULING

Pending before the Court are cross motions to enforce settlement filed by Plaintiffs Graphic Packaging International, Inc. ("GPI") and Factory Mutual Insurance Company ("FM") [Doc. No. 66] and Defendant G & Z Montageservice GmbH ("G & Z") [Doc. No. 71]. For the following reasons, GPI and FM's motion is DENIED as MOOT, and G & Z's motion is DENIED.

I. FACTS AND PROCEDURAL HISTORY

This lawsuit arises from a construction accident at GPI's West Monroe paperboard manufacturing plant.

On October 3, 2005, GPI and its insurer, FM, filed a Complaint in this Court alleging that G & Z and its subcontractor, Barnhart Crane & Rigging Company ("Barnhart"), negligently dropped and damaged a piece of equipment called a festoon during the manufacture and installation of a $9,000,000 printing and converting line. As a result, GPI claims that it had to reroute scheduled production to other lines or to another plant at an estimated cost of $1,181,992.

On May 30, 2006, Barnhart filed a third-party complaint against its insurer, Zurich

American Insurance Company ("Zurich").

On May 31, 2006, Barnhart also filed a cross-claim against G & Z.

On September 7, 2006, Zurich filed a Motion for Summary Judgment based on exclusions in Barnhart's policy of insurance.

On April 27, 2007, Magistrate Judge Mark L. Hornsby issued a Report and Recommendation, recommending that the motion be denied.

Before the Court could act on Magistrate Judge Hornsby's recommendation, however, on June 6, 2007, GPI, FM, G & Z, and Barnhart filed a Joint Stipulation and Motion to Partially Dismiss ("Stipulation") [Doc. No.64], which provides:

2.

Plaintiff Graphic Packaging alleges that the combined negligence of G & Z and Barnhart, and/or their employees, caused the accident which resulted in damage to the festoon.

3.

After investigation and discovery, it has been determined and has been agreed to by all parties that the accident and any alleged damages to Graphic Packaging was not caused by Barnhart and/or its employees and for that reason plaintiff Graphic Packaging seeks to dismiss Barnhart from these proceedings pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

4.

After investigation and discovery, it was also determines [sic] and agreed to by all parties that the festoon was dropped and damaged due to the fault and/or negligence of G & Z and/or its employees . . . and G & Z has agreed to be liable and responsible in these proceedings to plaintiff, Graphic Packaging, for any and all recoverable, provable, and proven damages . . . .

[Doc. No. 64].

Based on this Stipulation, on June 7, 2007, the Court issued a Judgment [Doc. No. 65] dismissing the claims of GPI against Barnhart, dismissing Barnhart's claims against Zurich and G & Z, and denying Zurich's Motion for Summary Judgment as moot.

Following the dismissal of Barnhart and Zurich, the remaining parties attended a mediation on June 12, 2007, and reached an agreement. The terms of that agreement were set forth in a Memorandum of Settlement. Item number two provides that the parties will "sign mutual releases of all claims." However, the parties have been unable to reach agreement on the appropriate language of the releases.

On August 3, 2007, GPI and FM filed a Motion to Enforce Settlement [Doc. No. 66]. They contend that G & Z "has demanded that Plaintiffs execute a Receipt and Release containing additional terms, conditions and obligations inconsistent with the discussions of the parties and the Memorandum of Settlement." [Doc. No. 66, p. 2]. GPI and FM argue that G & Z should be ordered to pay $350,000.00 as agreed in the Memorandum of Settlement.

On August 16, 2007, G & Z filed a Memorandum in Partial Opposition to Motion to Enforce Settlement [Doc. No. 70]. G & Z agrees that the case has settled and contends that the "disagreement is solely over whether GPI and FM should warrant and represent that they are the real parties in interest and agree to indemnify and defend G & Z and its liability insurer, Basler Securitas, in the event some third party asserts and succeeds in asserting these claims against them." [Doc. No. 70, p. 1].

On August 22, 2007, G & Z filed a Cross Motion to Enforce Settlement [Doc. No. 71]. G & Z asks the Court to direct GPI and FM to sign a release with the wording "customarily executed in connection with the settlement of a property damage dispute." [Doc. No. 71-2, p. 1].

3

In support, G & Z attaches a declaration from Charles Trascher ("Trascher"), the attorney who formerly represented Barnhart in this lawsuit. Trascher states that the type of language requested by G & Z is "relatively standard" and that "every property damage case in which [he has] ever been involved that is settled contains provisions of this sort." [Doc. No. 71-4, ¶ 6]. Trascher further states that, in his experience, "the warranty and defense, indemnity and hold harmless provisions are implied in every settlement. In other words, whether or not the parties, when negotiating settlement expressly and specifically mention these provisions, it is understood that the receipt and release will include these provisions." [Doc. No. 71-4, ¶ 8].

On September 11, 2007, GPI and FM filed a Memorandum in Opposition to Cross Motion of Defendant G & Z to Enforce Settlement [Doc. No. 73]. GPI and FM state in that Memorandum that the settlement amount has now been received, and they have executed a Receipt and Release identical to that proposed with G & Z's Cross Motion, except for the disputed paragraph 5. Notably, GPI and FM have agreed that they are the real parties in interest.

GPI and FM argue that the disputed terms/paragraph regarding indemnification and defense are not implied in the agreement. They argue that the Court, applying Louisiana law, should use the general rules on interpretation of contracts. Under those rules, GPI and FM argue that the Memorandum of Settlement is clear and unambiguous and no extrinsic evidence is admissible. Even if extrinsic evidence were admissible, GPI and FM rely on the affidavits of counsel and their corporate representative at the mediation, both of whom attest that there was no discussion, mention, or agreement at the mediation that GPI and FM would defend or indemnify G & Z and/or its insurer against third party claims.

4

## II. LAW AND ANALYSIS

Pursuant to Louisiana Civil Code article 3071, "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." Such a compromise "shall be made in writing or recited in open court . . ." La. Civ. Code art. 3072. A memorandum of settlement can constitute a compromise under article 3071. See LeBlanc v. State Farm Ins. Co., 2003-1522(La. App. 3 Cir. 5/26/04); 878 So.2d 715.

The Court applies the rules of contractual interpretation to compromise or settlement agreements. Lavergne v. Quality Fabricators of Eunice, Inc., 2004-125 (La. App. 3 Cir. 12/8/04); 888 So.2d 1147, 1153. If the words of the agreement are clear, explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. However, "[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. Civ. Code art. 3076.

In this case, the parties signed a Memorandum of Settlement following mediation, and they agree that they settled the claims at issue.[1] In fact, the parties have exchanged payment and an executed release. The only issue is whether the parties, explicitly or implicitly, agreed, as part of the release provision of the settlement, that GPI and FM would defend and indemnify G & Z and its insurer.

Applying basic contract principles, the Court finds that there was no agreement on this

---

[1] Although "[a] compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts," La. Civ. Code art. 3082, no party moves for rescission of the settlement. A "compromise cannot be rescinded on grounds of error of law or lesion." Id.

5

provision. The Memorandum of Settlement states that "Plaintiffs and Defendant will sign Mutual Releases of all claims" and that the "parties further agree to execute and deliver such additional agreements and documents as shall be necessary to carry out the purposes of this agreement . . . ." The Memorandum of Settlement does not include any provisions on indemnity or defense, but does include an agreement to execute releases.

The term "Mutual Releases" is ambiguous since a release could encompass many provisions, and, as is obvious in this case, there is not one standard form release. After consideration of the extrinsic evidence, the Court finds that there was no meeting of the minds on indemnity and defense provisions. Clearly, G & Z's counsel, in good faith, believed that any release would include provisions on indemnity and defense.[2] Just as clearly, GPI and FM's counsel and corporate representative did not discuss, mention, or contemplate that any release signed would include indemnity and defense provisions.

Under these circumstances, the Court finds that there was no agreement for G & Z to execute a release containing an indemnity and defense provision.

## III. CONCLUSION

For the foregoing reasons, G & Z's Cross Motion to Enforce Settlement [Doc. No. 71] is DENIED. GPI and FM's Motion to Enforce Settlement [Doc. No. 66] sought only for the Court to order G & Z to provide it with the settlement funds, as the parties agreed. The parties have since exchanged settlement funds, and G & Z has executed a release. Therefore, its motion is

---

[2] The Court has no doubt that the experience of counsel for G & Z and that of Trascher is a common one. However, given the opposing evidence, the Court cannot read in a customary provision on defense and indemnity, any more than some other type of provision, where there was no meeting of the minds.

DENIED as MOOT.

MONROE, LOUISIANA, this ___23___ day of ___October___, 2007.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE